**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**May 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Everett Frazier,**
**Commissioner of the West Virginia Division of Motor Vehicles,**
**Respondent Below, Petitioner**

**vs.)  No. 20-0745** (Kanawha County 19-AA-51)

**David Miller Jr.,**
**Petitioner Below, Respondent**


# MEMORANDUM DECISION


Petitioner Everett Frazier, Commissioner of the West Virginia Division of Motor Vehicles ("DMV"), by counsel Janet E. James, appeals the order of the Circuit Court of Kanawha County, entered August 21, 2020, which reversed the order of the Office of Administrative Hearings and reinstated the driving privileges of respondent David Miller Jr. Respondent appears by counsel David Pence.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, the decision of the circuit court is reversed and this case is remanded to the circuit court for entry of an order consistent with this decision.

Respondent was arrested for driving under the influence of controlled substances ("DUI") pursuant to West Virginia Code § 17C-5-2. Petitioner was alleged to have committed that offense on May 15, 2012.[1] Following this arrest, the Division of Motor Vehicles ("DMV") sent respondent an order of revocation dated June 13, 2012, which revoked his driver's license for the offense of driving a motor vehicle while under the influence of alcohol, controlled substances, or drugs and refusing to submit to the secondary chemical test of the breath ("refusal"). Respondent requested a hearing on the revocation of his license.

---

[1] Inasmuch as we are reversing and remanding this case to the circuit court for further proceedings on grounds that do not relate to the circumstances surrounding respondent's traffic stop, they are not addressed in detail herein.

The Office of Administrative Hearings ("OAH") conducted an evidentiary hearing on September 4, 2015.[2] Neither party subpoenaed the investigating officer. Over respondent's objection, petitioner admitted into evidence its agency documents, which included respondent's DUI information sheet, the Intoximeter Print Out Ticket, and the implied consent statement. After presenting these documents, petitioner rested its case without calling any witnesses.

Also at the hearing, respondent testified on his own behalf and he called two witnesses, his mother and father. Respondent testified that he did not consume alcohol prior to operating the motor vehicle on the day of his arrest and he denied being impaired at the time of the accident leading up to his arrest. Respondent also testified that he did not refuse a secondary chemical test. Respondent's mother testified that she arrived at the scene of the accident while respondent was in the back of an ambulance. Ms. Miller testified that it appeared that a beer can had exploded in the vehicle during the accident and respondent did not have the smell of alcohol on his breath when she arrived at the scene. Respondent's father testified that he had been at the family farm with respondent in Cross Lanes shortly before the accident, that he may have left beer in the vehicle, and that the vehicle had been driven by multiple members of the family. The OAH ultimately entered a final order on April 29, 2019, which modified the DMV Commissioner's Order of Revocation. Specifically, the OAH's final order affirmed the DMV's order of revocation for a violation of West Virginia Code §17C-5-2 and reversed the DMV's order of revocation for refusing to submit to a secondary chemical test based upon the testimony provided by respondent.[3]

On May 13, 2019, respondent appealed the matter to the Circuit Court of Kanawha County. The circuit court reversed the OAH's final order, finding that, after the creation of the OAH in 2010, "the 'agency' for administrative license revocation proceedings is the Office of Administrative Hearings, not [petitioner]." Related to this finding, the circuit court found that

> "[t]he OAH conflates the definition of 'agency' and 'party' in the West Virginia Administrative Procedures Act (APA) to reach the unintended result that [petitioner] is both the 'agency' and the 'party' to the litigation. Having been deemed both the 'agency' and the 'party' by the OAH, [petitioner] was permitted to move [its] file into evidence despite respondent being denied his request to confront Officer Billy Helmbright."

---

[2] A hearing was initially scheduled for November 8, 2013, but it was continued after the officer who had been subpoenaed by petitioner failed to appear. Following this continuance, there were several more continuances requested by the parties.

[3] Respondent testified before the OAH that he did not refuse to provide a secondary breath sample and the OAH ultimately reversed the DMV's order of revocation that was premised upon respondent's refusal to submit for a secondary chemical test. Although the order that is presently on appeal reversed the OAH's final order, and dismissed this matter, the circuit court's order is not clear as it relates to the refusal issue. Accordingly, we would request that the circuit court clarify its ruling as to the refusal issue in light of this opinion.

As a result, the circuit court found that "the OAH improperly allowed [petitioner] to move all documents in [its] file into evidence absent compliance with the West Virginia Rules of Evidence or production of the author of those documents for cross-examination after [respondent] testified and produced witnesses." Although the circuit court acknowledged that the OAH has broad discretion to admit or deny evidence, it found that the OAH is nevertheless "bound by the West Virginia Rules of Evidence when making a ruling on the relevance and admissibility of evidence presented by either side at revocation hearings." The circuit court further ruled that "[respondent] suffered actual and substantial prejudice as a result of Officer Billy Helmbright's absence" where "[respondent] denied the allegations against him contained in Officer Billy Helmbright's reports and produced witnesses in support of his testimony."[4] Thus, the circuit court reasoned that "[a] significant conflict of evidence exists in the case and [respondent] was denied his ability to confront his accusers to his detriment."

Petitioner filed this appeal challenging the circuit court's August 21, 2020, order. On appeal, petitioner raises three assignments of error. First, petitioner argues that the circuit court erred when it found that respondent was deprived of the right to due process of law to confront his accuser. Next, petitioner maintains that the circuit court erred when it found that the OAH improperly allowed the DMV agency file into evidence. Finally, petitioner claims that the circuit court erred when it ruled that the "agency" for administrative license revocation proceedings is the OAH and not the DMV. We address these assignments below.

In *Frazier v. Fouch*, __ W. Va. __, 853 S.E.2d 587 (2020), we reiterated the standard of review that governs this matter.

> "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

> "In cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. Pt. 2, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

Syl. Pts. 1 and 2, *Fouch*. Guided by this standard, we review petitioner's arguments.

Petitioner argues that the circuit court erred when it found that respondent was deprived of the right of due process of law to confront his accuser. As a related assignment of error, petitioner also claims that the circuit court erred when it found that the OAH improperly allowed the DMV

---

[4] Respondent denied being offered field sobriety tests because he was in the back of an ambulance while on the roadside. He also denied consuming alcohol and explained the odor of alcohol was a result of alcohol that was left in his parent's vehicle that exploded during the crash.

file into evidence without complying with the West Virginia Rules of Evidence or providing testimony from the responding officer. Petitioner maintains that the West Virginia Code specifically provides that the DMV records are admissible, and there is no requirement that the officer appear. Respondent concedes that the lower court erroneously concluded that the DMV file should not have been entered into evidence in light of *Fouch*, but notes that the circuit court correctly found that petitioner failed to satisfy its burden of proof and argues that the circuit court correctly weighed the totality of all evidence and appropriately reversed the revocation of respondent's driver's license.[5] Our review of the record, however, suggests that the court's order contained erroneous findings as to these two assignments of error. Thus, consistent with our ruling in *Fouch*, we agree with petitioner as to these issues.

In Syllabus Point 3 of *Fouch*, we held:

> "In an administrative hearing conducted by the Division of Motor Vehicles, a statement of an arresting officer, as described in W. Va. Code § 17C-5A-1(b) (2004) (Repl. Vol. 2004), that is in the possession of the Division and is offered into evidence on behalf of the Division, is admissible pursuant to W. Va. Code § 29A-5-2(b) (1964) (Repl. Vol. 2002)." Syl. Pt. 3, *Crouch v. W. Va. Div. of Motor Vehicles,* 219 W. Va. 70, 631 S.E.2d 628 (2006).

In *Fouch*, we found that the circuit court erred by ruling that the DMV's file, including the DUI information sheet, should not have been admitted into evidence and considered by the OAH. The *Fouch* Court also addressed earlier memorandum decisions from this Court wherein we discussed that the admission of the DMV file is mandatory before the OAH. Specifically, the *Fouch* decision referenced our 2018 decision where we noted

> [w]e have previously stated that "[w]ithout a doubt, the Legislature enacted W. Va. Code § 29A-5-2(b) with the intent that it would operate to place into evidence in an administrative hearing ['a]ll evidence, including papers, records, agency staff memoranda and documents in the possession of the agency, of which it desires to avail itself.[']" *Crouch*, 219 W.Va. [at] 76, 631 S.E.2d [at] 634. As evidenced by the use of the word "shall," admission of the evidence identified in the statute is mandatory. *Id.* The secondary chemical test result was in the DMV's possession, and the DMV sought to avail itself of the result. Accordingly, the result of the secondary chemical test should have been admitted into evidence, subject to a rebuttable presumption as to its accuracy. *Id.* at 76, n.12, 631 S.E.2d at 634, n.12 ("We point out that the fact that a document is deemed admissible under the statute does not preclude the contents of the document from being challenged during the hearing. Rather, the admission of such a document into evidence merely creates a rebuttable presumption as to its accuracy.").

*Fouch*, __ W. Va. at __, 853 S.E.2d at 592-93 (quoting *Reed v. Lemley*, No. 17-0797, 2018 WL

---

[5] Respondent's brief does not address many of the issues raised by petitioner, but instead argues that the circuit court correctly reversed the OAH's decision by applying the factors set forth in *Crouch v. W. Va. Div. of Motor Vehicles*, 219 W. Va. 70, 631 S.E.2d 628 (2006).

4944553, at *4 (W. Va. Oct. 12, 2018) (memorandum decision)).

As we noted in *Fouch*,

> [t]he clear, unambiguous language of [West Virginia Code § 17C-5A-2(c)(3)] provides that 'the party' seeking to compel a witness to appear at an OAH hearing has the responsibility to request the subpoena, and the responsibility to petition the circuit court for enforcement of the subpoena when the witness fails to appear.

__ W. Va. at __, 853 S.E.2d at 594.

Here, there is no evidence that respondent attempted to subpoena the officer. If respondent wanted to procure the appearance of the officer at the OAH evidentiary hearing, he should have subpoenaed the officer. Consistent with the *Fouch* decision, the circuit court's order was erroneous to the extent that it found that the officer's failure to testify at the OAH hearing implicated respondent's due process rights to a full and fair hearing. Moreover, West Virginia Code § 29A-5-2(b) and our decision in *Fouch* clearly provide that petitioner's file was appropriately before the OAH. Thus, the circuit court's ruling to the contrary is erroneous.

Finally, petitioner argues that the circuit court erred when it ruled that the "agency" for administrative license revocation proceedings is the OAH and not the DMV. Consistent with our decision in *Fouch*, the creation of the OAH in 2010 did not change the mandatory direction that the DMV's file shall be offered and made part of the record.

For the foregoing reasons, the circuit court's August 21, 2020, order is hereby reversed, and the case is remanded for entry of an order consistent with the *Fouch* decision. Further, inasmuch as the circuit court entered an order dismissing the matter, but failed to address the OAH's ruling that reversed the DMV's order of revocation due to respondent's refusal to submit to a secondary chemical test, this Court directs the circuit court to provide clarification with respect to this ruling. The mandate of this Court shall issue forthwith.

Reversed and remanded with directions.

**ISSUED:** May 20, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**DISSENTING:**

5

Justice William R. Wooton

Wooton, Justice, dissenting:

I respectfully dissent from the majority's decision to reverse the judgment of the circuit court and remand the case for entry of an order that comports with this Court's recent decision in *Frazier v. Fouch*, __ W. Va. __, 853 S.E.2d 587 (2020). I would have affirmed the circuit court's judgment, which reversed the order of the Office of Administrative Hearings ("OAH") and reinstated the driving privileges of respondent David Miller, Jr., because I believe that *Fouch*, the precedent upon which the majority relies, was wrongly decided.

Building upon on the shaky premise that West Virginia Code § 29A-5-2(b) not only allows, but *commands*, the admission of Division of Motor Vehicle ("DMV") records into evidence in any and all circumstances, the majority concludes that these hearsay documents are sufficient, standing alone, to sustain the hearing examiner's finding that petitioner was guilty of driving under the influence. Further, the majority's reassurance that the admission of the records creates only a rebuttable presumption as to their accuracy, citing *Crouch v. West Virginia Division of Motor Vehicles*, 219 W. Va. 70, 76 n.12, 631 S.E.2d 628, 634 n.12 (2006), is revealed to be nothing more than a fig leaf of due process; in the instant case, petitioner presented the sworn testimony of three witnesses, none of whom – singly or together – were apparently enough to rebut what appears to be a presumption clad in armor plate.

I begin with the foundation of this jurisprudential house of cards, the statute. West Virginia Code § 29A-5-2(b) provides, in relevant part, that

> [a]ll evidence, including papers, records, agency staff memoranda and documents in the possession of the agency, of which it desires to avail itself, shall be offered and made a part of the record in the case, and no other factual information or evidence shall be considered in the determination of the case.

Although this Court has held that the statute is "clear and unambiguous and plainly expresses . . . legislative intent[,]" *Crouch*, 219 W. Va. at 76, 631 S.E.2d at 634, I cannot agree. First, on its face the statute is actually quite nonsensical, as by its express terms it excludes consideration of anything *but* an agency file as evidence in an administrative hearing – a fact the majority conveniently ignores. Second, the statute does not address the issue of authentication, i.e., "evidence sufficient to support a finding that the item is what the proponent claims it is[,]"[6] which would seem to be necessary inasmuch as most if not all of the documents contained in a DMV file are not self-authenticating.[7] Finally, the statute ensures that the playing field in an administrative proceeding will never be level, in that documentary evidence offered by the agency *must* be admitted, while evidence offered by an individual litigant comes in only pursuant to "the rules of

---

[6] *See* W. Va. R. Evid. 901(a).

[7] *See* W. Va. R. Evid. 902.

6

evidence as applied in civil cases in the circuit courts of this state[,]" or is otherwise "of a type commonly relied upon by reasonably prudent men in the conduct of their affairs." *See* W. Va. Code § 29A-5-2(a).

In 2010, four years after *Crouch* was decided, the West Virginia Legislature created the OAH as a separate operating agency within the Department of Transportation, W. Va. Code § 17C-5C-1(a), and established a transition period after which the new agency was charged with the duty to hear DMV appeals. *See id.* § 17C-5C-3. Although a number of circuit courts – including the court below in this case – concluded that the automatic admission rule of West Virginia Code § 29A-5-2(b) no longer applied in the "modern administrative review hearing" procedure specifically established for proceedings before the OAH, this Court emphatically disagreed. *Fouch*, __ W.V. at __, 853 S.E.2d at 591-92; *see also Frazier v. Condia*, No. 19-0465, 2020 WL 4355713, at *2 (W. Va. July 30, 2020) (memorandum decision) ("[i]t is well-settled that the DMV file is to be accepted into evidence at a hearing before the OAH."); *Frazier v. Riddel*, No. 19-0197, 2020 WL 4355641, at *2 (W. Va. July 30, 2020) (memorandum decision) ("[w]e have, however, continued to uphold [W. Va. Code § 29A-5-2(b)] in the decade since the OAH began.").

In *Fouch*, this Court also held, albeit sub silentio, that the DMV file is admissible in a hearing before the OAH even in the absence of the arresting officer – a giant step beyond anything contained in *Crouch* and its progeny. Further, the Court found that the DMV has no duty to secure the officer's attendance at an OAH hearing, thus opening the door to hearings which pit petitioner and his or her witnesses and evidence against "a testimonial statement by a witness who does not appear at trial," *State v. Kennedy*, 229 W. Va. 756, 765, 735 S.E.2d 905, 914 (2012), i.e., a silent document that can neither be cross-examined nor impeached.

Obviously, *Kennedy* was a confrontation case decided pursuant to article III, section 14 of the West Virginia Constitution, and thus is not directly applicable to a civil proceeding. With that acknowledged, however, *Kennedy* and its federal antecedents[8] are instructive in that confrontation rights are closely related to due process rights;[9] both prohibit the State from depriving a citizen of liberty or property on the basis of unreliable evidence and/or in a proceeding that is fundamentally unfair. We have held that

---

[8] *See Crawford v. Washington*, 541 U.S. 36 (2004) (Confrontation Clause bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) (certificates of drug analysis fell squarely within the types of testimonial materials excluded from evidence in the absence of a witness competent to testify as to the statements contained therein); *Williams v. Illinois*, 567 U.S. 50, 54 (2012) (narrowing *Crawford*, holding that testimonial materials whose "primary purpose of accusing a targeted individual of engaging in criminal conduct" must be excluded from evidence in the absence of a witness).

[9] Article III, section 10 of the West Virginia Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."

[a]pplicable standards for procedural due process, outside the criminal area, may depend upon the particular circumstances of a given case. However, there are certain fundamental principles in regard to procedural due process embodied in Article III, Section 10 of the West Virginia Constitution, which are: First, the more valuable the right sought to be deprived, the more safeguards will be interposed. Second, due process must generally be given before the deprivation occurs unless a compelling public policy dictates otherwise. Third, a temporary deprivation of rights may not require as large a measure of procedural due process protection as a permanent deprivation."

Syl. Pt. 5, *In re J.S.*, 233 W. Va. 394, 758 S.E.2d 747 (2014) (citing Syl. Pt. 2, *North v. Bd. of Regents,* 160 W.Va. 248, 233 S.E.2d 411 (1977)).


All three criteria are met in this case. First, this Court has held that "'[a] driver's license is a property interest and such interest is entitled to protection under the Due Process Clause of the West Virginia Constitution.' Syl. Pt. 1, *Abshire v. Cline*, 193 W.Va. 180, 455 S.E.2d 549 (1995)." Syl. Pt. 2, *Straub v. Reed*, 239 W. Va. 844, 806 S.E.2d 768 (2017). Indeed, in a rural state such as West Virginia, which has little or no public transportation in many areas, that property interest is critical to an individual's ability to get to work, get to a grocery store, get to church, get to a child's concerts, ball games, recitals – in short, to live a normal life. Second, there is no reason, let alone a compelling reason, why arresting officers cannot be required to attend license revocation proceedings, assuming that those proceedings are noticed far enough in advance to allow for scheduling. In this regard, the arresting officer in *Fouch* was subpoenaed five times but never did appear, occasioning numerous continuances. Astoundingly, this Court's response to the officer's continued refusal to obey lawful process was to chastise the *petitioner*, holding that as the party "seeking to compel a witness to appear at an OAH hearing[,]" he had "the responsibility to petition the circuit court for enforcement of the subpoena when the witness fails to appear." *Fouch*, __ W. Va. at __, 853 S.E.2d at 594.[10] Third, although it could be argued that a license suspension is a "temporary" deprivation of a property right, such argument could only be made from within the confines of an ivory tower. The loss of a driver's license for even six months can have cascading consequences where an individual is left without means of transportation – another significant real-world burden, *see supra* note 5.

_____

[10] Given that the Commissioner, not the petitioner, has the burden of proof in a revocation hearing, W. Va. Code § 17C-5C-4(d), I fail to see how this Court can require the petitioner to not only subpoena the arresting officer – a hostile witness if ever there was one – but also to institute court proceedings to force the officer's to appear, i.e., to obey a lawful court order that any other person in the State would be required to obey. The additional time and expense occasioned by continuances and extra court proceedings is a real-world burden whose significance was of no apparent concern to the Court in *Fouch*.

I understand and share the Court's desire to get impaired drivers off the road; the offense of driving under the influence is serious, and the criminal and civil penalties therefor should be serious as well. However, the nature of an offense cannot be the yardstick by which we measure the amount of process due to individuals who face the loss of a valuable property right. This Court's decision in *Fouch*, holding that the DMV can sustain its statutory burden of proof in the absence of *any* witness to authenticate, explain, defend, or testify as to the contents of a hearsay document, was an example of what one United States Supreme Court Justice termed "interpretive jiggery-pokery." *King v. Burwell*, 576 U.S. 473, 506 (2015) (Scalia, J., dissenting). Then, on the heels of *Fouch*, this Court went one step further in the instant case, finding that the so-called rebuttable presumption of accuracy of a hearsay document carries the day despite the testimony of the petitioner and two other witnesses to the contrary. I am reminded of the United States Supreme Court's admonition in *Crawford* that "[d]ispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty." 541 U.S. at 62.

Because the result in this case is fundamentally unfair, and because it is likely to be repeated often in this post-*Fouch* world, I respectfully dissent.